May it please the Court, my name is Eric Schaeffer, and I appear for the Texas petitioners in this matter. I'd like to briefly summarize, if I may, the conflict between the flexible permit rules and the major modification requirements of federal law, and then explain why we don't think they've been resolved in the rules that EPA would like you to uphold. A major modification is triggered by physical change that significantly increases actual emissions. Under Section 165 of the Clean Air Act, you can't even begin to construct a major modification until you get a major new social review permit, and I think everybody does agree with that. In contrast, once you get a flexible permit, you can make an unlimited number of modifications as long as you don't increase the maximum allowable emissions under the flexible permit. Those are based on the maximum potential to emit, the maximum capacity of the units under the flexible permit cap, so those allowable emissions can be and are several times higher than the actual emissions from those facilities, and we put examples of that in the record at tab K, document 46, starting at page 21, just explaining that gap. That gap between actual and allowable emissions is what creates the conflict, and that can be resolved. What is your concern about the adequacy of the regulation? I'm sorry? What is your concern? Explain for me in operation what's the difficulty with it. The difficulty is that the agency has put forward a rationale that they say addresses these major modifications. I want to be really clear about the type I'm talking about. We don't dispute that when you come in for a permit, any major modifications you have planned, that are on the board, you can't use the flexible permit to get around those sorts of things. Let me put a little more on that question and help me. This is sort of a second go-around, and the very first go-around, I was persuaded that maybe it ought to be clearer, and Judge Jolley wrote for the panel and said, it is clear, and so then they come back to the EPA, and the EPA says, okay, the Court of Appeals says it's clear, so why should we do more? So my question is, why doesn't that answer the question? We understood the requirements of Section 711 to apply at the permit application stage, and we did not read the opinion as going beyond that, and we're looking at the language of the text, which says when you apply in order to get a permit, you have to show that your emissions meet new source review. So that's what you do at the time of the permit. It seems also clear that any new source review emission limits you've got then, you've got to comply with. That's a going forward obligation. We're talking about what happens seven, eight years down the road when you start a major modification. Do you have to come in and get a permit for that? EPA, I just want to point out, has not adopted a broad reading of Section 711, and they do not argue, they say they agree with our reading of it, that it goes beyond what you need to demonstrate at the time you apply for a permit. The earlier decision also cited Section 715 as providing that if there's a more stringent federal limit that conflicts with a flexible permit limit, then the federal limit controls. And that's fair enough. It does get, we do get into the question of, well, does the state get to decide which one is more stringent? But before we even get to that, Section 715C1 says that stringency test does not apply to modifications that do not require a permit amendment under the flexible permit rules. As I understand it, as I understand the briefs, you have no argument, or you're not arguing against the opinion of the court in this case earlier? Correct. We do not. And you are not, are you arguing against the regulation that is at issue? We are arguing that the Section 711, first, we had read the court's decision as not extending that beyond to requiring you to apply for a major new social review permit for some modification. Tell me, so I assume that your answer is, yes, we are challenging the regulation. Is that correct? We are. We do not think they are. All right. Now, tell me, just in as plain language as you can make the EPA regulation, what it is that you are challenging, and what kind of relief do you want? We think our problem can be resolved with a very specific reference, and it can be a single sentence, that says, after you get a flexible permit, if you have a later major modification, that's not covered by that permit, major modification pops up, you've got to come in and apply for a major new social review permit. That's what Texas had previously . . . But now, didn't we say that in the earlier opinion, that the regulation made clear that it did not apply to any major source, isn't that what we said? You did, relying on Section 711, and if I'm reading that correctly, there has to be language, and you cited Section 711 and Section 715. And you're saying, okay, what section are you relying on? Well, we don't think the requirement to get a permit for a major modification is there, and what we're dealing with now is the rationale EPA has put before the court. You are not relying on anything other than your interpretation of 711, is that correct? And EPA's. What? And EPA's. In the proposal, in the, rather, in the final rule, EPA does not interpret or present 711 as going beyond the application requirements. They maybe have read your decision incorrectly, but they do not say that. They rely on Section 721, and that's new, and we're now looking at the Section 721 permit amendment rules and saying where in there is the major modification requirement. So what does that enable that you think should be prohibited? I'm sorry, Your Honor? So what does this failure, as you see of the EPA, allow that shouldn't be allowed? What it allows is a major modification that increases actual emissions far above what the federal rules require that's made long after you get a permit. But that was the complaint that the EPA made in the last, in the last appeal before us, correct? Correct. Your Honor, we didn't read the prior decision as specifying the grounds that EPA had to go. We read it as a remand, saying this doesn't cut it. You didn't justify your rationale. And EPA has come back with that rationale. It's not relying on Section 711. It's looking at 721. But is that an issue that EPA could have raised at that time? I mean, why didn't, why didn't we address that? Did they not raise it, or did we not, did we ignore their argument with respect to that? And where do you come to your interpretation that it did not extend that far, and that it should be extended now, notwithstanding the fact that it all was before the Court earlier? Correct. Well, you know, as far as our position, we thought the Court had a perfectly reasonable basis for remanding the rule, and we understood that after a remand, it's, it's not a do-over. EPA has to come back with a rationale that, that makes sense, and that is obviously lawful. And they do not have to follow exactly the Court's reading of each provision. They have, they can come in and articulate a different reason why it doesn't work, or why they think the requirement to get a permit for a later modification, a new social review permit, is somewhere else in the rules. And that seems to be what they've done here. Well, don't you need a new, don't you need a new permit when you propose to do a major modification? Don't you need a new permit when you propose to do a major modification? You absolutely, we argue that you absolutely do, but not under the flexible permit rules. That's the problem we present. Flexible permit rules, the amendment requirements, permit amendment requirements, once you already have a permit, we don't think tell you, if you have a major modification, you've got to come in and get a federal new social review permit. You're just simply arguing that under the flexible rules that you can make a major modification. Without That's what, and Judge Opspinion said that's not true. It's clear that you can't. We think the language in the current rules that EPA is relying on don't trigger that requirement. And I just want to be clear, this isn't about what EPA will do, or what the State will do when it gets an application. It's whether you have to come in with that application in the first place. And we're looking at the language of the permit amendment requirements, and we're saying where in that paragraph does it require you to come in if you've got a significant increase in actual emissions and get a permit? I mean, it sounds like it's nitpicking the last decision is what it sounds to me like. Well, Your Honor, I don't know what else to say other than Well, I mean, it's hard. I mean, you know, I'm smiling about it because I mean, it is a lot of, you know, legal mumbo jumbo. And it's hard to put it down where it's clearly understood by somebody like me, what you're really talking about. But if I can just return to the question, the distinction that you're trying to make, what is EPA's rationale? You've got to get it down where the cows can get to it. Yeah. I'm sorry, sir. You've got to get it down so the cows can get to it. Right. If the, you know, if EPA is coming in and saying Section 711, that's what you do when you apply for a permit. Section 721, that's what makes you come in for an amendment. That's their rationale. Is it right or wrong? If you had any instance in which the opinion that we drafted in the regulations that the legislation has presented the kind of problem that you are concerned about? We do. We put three permits in the record, three flexible permits that just reading the plain language of the permits, authorize major new social review, authorize rather major modifications and say in the language of those permits, you don't have to comply with new social review until just before you complete those projects. Section 165 says you can't begin construction. You can't begin construction until you have that new social review permit in hand and you've satisfied all the requirements. Coming in at the tail end of construction and saying, well, now we're going to decide whether you've satisfied requirements that apply before you begin construction, that is absolutely not what Section 165 says you have to do. But still, you have not, I mean, you've not been aggrieved by in the form of a pollution that is not covered by the minor source regulation. I'm not quite sure how to answer that other than to say we have given examples, again, in the In other words, you, well, I mean, you're not saying that the air has become more polluted as a result of this regulation, because I understand what you said, except what you've said is that we are worried that you are now tagging the determination of the pollution at the end of the construction instead of at the beginning of the construction. Your Honor, I'm referring to a statutory requirement. Beg your pardon? No, it's not Section 165. It's not tethered to whether or not you've had an improvement in air quality or what the conditions are. These standards apply even in areas where the air quality is very, very good. They are mechanical. They basically say you can't begin construction of a major modification until you have a permit. Except, but stay with the question a little longer. I understood the question in saying, golly, that, I mean, your answer, that is that you are quarreling with the decisional point of compliance. That is, you say it should be at the inception, and they're allowing it, you say, before they commence the operation itself. And maybe I didn't follow you, but. We respect the decision laid down. And you can't require a language that says you may not circumvent major new source review requirements. We don't argue with that. You can't, EPA can't or didn't have a rational reason for saying this program is only limited to minor sources. We're not coming back on that. Again, we read the Section 711, the reference that the Court used to say, hey, these requirements are covered as applying at the permit application stage. That is what EPA is saying in disapproval. Well, you're saying that EPA did not embrace our opinion. EPA did not follow the interpretation. And fully embrace it. That would be another way to put it. That's what we have in front of us. If EPA had said, Section 711, we read that as saying, modifications that come up long after the permit has issued, the flexible permit has been obtained, you've got to come in and get a major new source review permit for that. That's not how they read it. Okay, the basis upon which EPA is approving these standards is important. Those words matter. What is your rationale for approving this? If the rule were that you cannot use the permitting process for the minor source review to work a major modification of the permit, if that were the rule, is that not adequate? If they're ruling more that the Section 711 would require that. Forget the sections. Stay away from the sections. Just tell me in lying straight language. To my question. Your Honor, because EPA has the responsibility for actually writing the rule after remand, they have to adopt that reading. If they say Section 711 covers it, that would satisfy. If they say it covers these after-the-fact modifications, we wouldn't be here. My question was, if the rule is that you cannot use this permitting process that we're talking about for minors to effect a major modification, that's not an adequate rule? That's not what it says. That's not my question. If it did say that, that would be one way to fix it. I didn't ask you what it said. Listen to my question. I'm sorry. It helps to listen. Sometimes. Now, what I'm saying is that, I'll ask it a third time, if the rule were simply that you cannot effect a major modification using this minor permitting system, would that be a satisfactory rule for you? I thought that's what you're striving for. That is what we're striving for. Well, then the answer is that would be. Yes, it would. All right. But now your argument is, and that's essentially, not essentially, that's what Judge Jolly's opinion said. Now, I thought it more complicated to get there than he did, but he got there, and a sound opinion, and the VA said, well, this is good, and now we're writing it ourselves, and better than that, we don't have to go litigate that one. So I'm not sure where we are. I'll go back to the first question I asked you. So what the concern, Your Honor, is that that broad reading of Section 711 has not been adopted and presented by EPA as a rationale for approval. It has to be in order for this rule to be consistent with the opinion. It doesn't do that. Okay, Mr. Schaffer. And the Court can't supply something that EPA hasn't. I think we have that point. It seems to me that we have that point. Okay, and you've saved some time for rebuttal, Mr. Schaffer. Let's hear from Mr. Greenberg from the Department of Justice. May it please the Court, Alan Greenberg on behalf of Respondent Environmental Protection Agency. EPA acted reasonably and in accordance with the Clean Air Act when it approved Texas's flexible permit program. The citizens' groups primarily challenged EPA's approval based on an argument previously decided by this Court, specifically, does Texas's flexible permit program allow sources to evade compliance with major new source review requirements? And EPA reasonably answered that question, no, because the flexible permit program focuses on minor new source review. EPA's decision is well-supported by three reasons. First, the regulatory text of the flexible permit program precludes sources from evading major new source review. Second, the prior decision of this Court found that the flexible permit program does not allow evasion of major new source review. And third, the state of Texas has consistently asserted that the flexible permit program is solely a minor new source review program that cannot be used to evade major new source review. What do you say to the examples that he pointed to where in operation they say you do not abide that rule, the principle that you just announced? First of all, Your Honor, EPA just recently approved the flexible permit program that is now going to be in conformance with the Clean Air Act. And going forward, EPA and the state of Texas are in agreement that this program, consistent with the prior decision of this Court, will not allow evasion of major new source review. Are you saying that there's a gap there and that going forward that's not going to happen but between the opinion of this Court and the announcement of this new rule that there was some larger use of the flexible permit program? Not since the opinion of this Court, Your Honor. The first version of the flexible permit program was adopted in approximately 1994, and there may have been some issues at that time. I'm not conceding that. So his examples were antidoted the opinion of the Court? It was preceded, the opinion of the Court preceded EPA's disapproval decision in 2010. Turning to the regulatory text, EPA is relying on Section 711, contrary to Petitioner's Council's argument. If you look at the Federal Register notice that approved this program, EPA cites to 711 H and I, which are the two provisions that require an owner of a facility or a source, to demonstrate that each facility will comply with applicable requirements of nonattainment and prevention of significant deterioration review. Those are the two components of major new source review, and the Court relied on those in the prior decision. Those sections on 711 are addressed of applications for a permit. Now, that Section 711 combined with 721 addresses the issue of major modifications. A major modification, by definition, is a significant increase in emissions. And the program, the flexible permit program, addresses significant increases in emissions in Section 721. So, this flexible permit provision, 721, requires owners that are making a change that will result in significant increases in emissions, that's the major modification language, significant increases in emissions, that would place the source out of compliance with major NSR, that owner of the permit has to seek an amendment to the flexible permit to become compliant. And, because that modification triggers the obligation to seek an amendment, we circle back to 711, because an amendment requires an application, and an application under 711 requires compliance with major new source review. So through the amendment process, that major modification would require the owner to comply with major new source review requirements. To the extent there's any ambiguity in that mapping of 721 and 711, Section 715, another section that this Court relied upon in its prior decision, noted that if there's more than one rule, regulation, or flexible permit condition that applies, then the most stringent shall govern and be the standard under which compliance is measured. Compliance with major NSR is a condition of a flexible permit, that's set up by Section 711. So, therefore, if major NSR is the most stringent standard, it will govern and a source or facility will have to apply for and undertake major new source review prior to going forward with construction of a major modification. Second, Your Honor, this Court's prior decision supports EPA's approval. EPA cited it in its rulemaking that approved the decision. As this Court is well aware, this Court held that the flexible permit program does not allow major NSR evasion because it affirmatively requires compliance with major NSR. And all of the sections that the Court relied upon in its prior decision are in the current flexible permit program that EPA approved, and, therefore, the prior decision of this Court is persuasive authority. Third, Your Honor, Texas has consistently stated that the flexible permit program is a minor NSR program, and the Texas Register publications explain repeatedly that the flexible permit program is a minor NSR program and owners cannot circumvent major NSR requirements. Does the owner decide when he makes his application for a modification whether it's going to involve a major source? Well, he or she would need to do that, Your Honor, because if the owner is about to undertake a modification, that owner would need to decide, is this going to fall within the category of minor modifications that won't exceed the allowable cap, in which case the owner doesn't need to seek further permit amendments or alterations. Is there a review of that? I mean, I'm not sure exactly what your opponent is concerned about, but, I mean, is it just up to the owner to decide that or what? Well, the owner does have to make what's called the applicability determination. Like any owner of a facility that's going to modify his or her source, the owner has to decide, well, what regulations apply to what I'm about to do? If what I'm about to do is going to increase emissions significantly, then I have to seek potentially an amendment to the permit, particularly if it's going to trigger the thresholds for major new source review. If the owner looks at what he or she intends to undertake as a modification of the source and calculates that the emission increases are not going to exceed the allowable cap. Now, what if the owner makes a mistake, and it turns out that it is a major emission, as opposed to the manner that it had calculated would result? What does he then have to undo what he has done? Well, that's an enforcement issue, Your Honor. If the owner does not comply with the requirements of the Clean Air Act, they're in violation of the Clean Air Act and would be subject to an enforcement action, whether that... Up to and including shutting it down. Or penalties, or maybe simply, you know, the state of Texas has the lead enforcement authority. Maybe depending on the severity of the violation, the state contacts them and says, this is what you have to do to come into compliance, and the person does it, and whether they're subject to a penalty is subject to enforcement discretion. I mean, so there is some significance to the argument that the EPA should make the determination at the beginning as to what kind of emissions are going to result from the modification, so that at the end, there's no problem in terms of enforcement. I mean, is that the point that they're making? That's the point they're making, and my response, Your Honor, is that this decision is made up front by the owner, who has to look at the modification that the owner is intending to undertake, decide whether it meets the threshold for a major modification. He is the one, and he is the one that's got to pay the consequences for his own mistake. In other words, if his mistake is that it is emitting significantly more pollution into the air than I thought, then are there consequences to that? I guess in terms of enforcement penalties, you know, stop the new facility that he's built or whatever. Those are expenses he's got to bear, I assume. Well, yes, generally. I think there's two issues implicit in your question. There's the issue of the owner looks at it, says, my emissions don't meet the threshold, and therefore, I don't need a major NSR review. But then once he installs the equipment, finds out, oops, I estimated incorrectly. That would be one scenario. The other would be someone who up front calculated the numbers, said, I exceed the threshold, but guess what? I'm not going to do a major NSR review, which would be an obvious violation, and the owner would be subject to the consequences. In the former, there would be a potential enforcement action, and it would be up to the— What I'm really getting to ask, I suppose, is the point, are the consequences of his mistake so stringent there would be real incentive for him to avoid such a mistake, or are the consequences so light that he would say, well, I don't care because I'm willing to pay the penalties. I'm willing to do this because I want to accomplish the particular goal of these modifications I'm making? The consequences are significant, Your Honor. They are significant. There are significant penalties that can be assessed. There's also significant injunctive relief that can be obtained through an enforcement action, and it's obviously a case-by-case basis, depending on the facts of the case, how significant the penalties are. If I'm building a large plant, and it's likely to be a major source, is there any requirement that I obtain a permit as I commence, or may I wait somewhere down the road, midstream, and seek a permit? Is there any timing requirement? You need to do it before, Your Honor. How do you know before? The owner decision doesn't control whether— The owner is obligated to determine whether the law applies, which is no different than most situations under the law. The person has to— He determines it, but I don't think it's going to be—I don't think that's going to be the case, but we go ahead, so then he gets—there's no requirement that he obtain a permit. As long as he gets a permit before he comes online, he's okay? If he gets a permit before—he should get a permit before he goes online if his activities are going to trigger the threshold. He's not required to have the permit at any point in time before he comes online? Yes he is, Your Honor. I'm sorry? Yes. He has to have— Yes, he is not. I'm sorry. Is he required to have a permit before he comes online? Yes. A major source. Yes. I mean, that's the way the whole permitting process works under the Act, right? Correct. But under the flexible permitting, he's not? He has to get an amendment to his flexible permit if the change is going to result in significant omissions that— I'm focusing—I'm just focusing for the moment on the owner determination, which we were talking about under the flexible. Yes. And I was juxtaposing that, or attempting to, with the owner who is building a plant that may likely be a major source or may not. My question with that situation, it's not the owner determination. He has to have a permit before he commences, because he's required to do all that calculation at the outset. And under permitting, he's required—he can go forward. No, under either situation. He's what? You need permit authorization to go forward with a major modification.  Thank you, Your Honor. Thank you. Ms. Hubenak, we'll hear from you. May it please the Court. This Court's 2012 opinion in Texas v. EPA answers all the issues that are before the Court today. For over 20 years, Texas has used the Flexible Permit Program. And for over 20 years, Texas has consistently said that it is a minor new source review program that affirmatively requires compliance with major new source review. This Court, in its 2012 opinion, agreed with Texas. And the holding in that case, that the Flexible Permit Program does not allow evasion of major new source review, should be applied in this case. Now the Flexible Permit allows a company to have one permit that covers all its facilities. And let me answer a few of your questions. If a company has a major modification, if they're going to be making new construction or they're going to be modifying facilities, they have to, at that point, determine what the increase in emissions is going to be. When they determine that, if it is fitting the definition of major modification, they are required to go through major new source review and comply with Texas' rules for major new source review. Can it be a major modification and not involve a major source review? No. You have to, if you have a major, if you fit the definition of major modification, you're One of the arguments that the environmental groups make is that if you don't fit the definition of modification, they talk about the definition of modification and you don't fit the definition of modification because your increase is going to stay below your flexible cap, then you never go to major modification. That's not how it works. If you have the definition of major modification, you must comply with major new source review. We disagree that, of course, disagree with the petitioner's position that you're never going to have to get a permit if you have a, that you can evade. That's what this court held in 2012 and that's the holding that should be applied here. At the time of the previous case, Texas cited to this case that EPA, when it disapproved Texas' permit program in that 2012 decision, EPA could not cite one instance where they had been evasion of major new source review. Now the petitioners talk about these three permits, but these three permits don't show that there's a major evasion of major new source review. This court's holding would hold operators in Texas to not doing so. The way that an operator, if they have to comply with major new source review, they have to come to TCEQ for pre-approval. As a practical measure, they bring an application to TCEQ. If TCEQ has questions, they ask those questions. Those questions are answered. And then the person, when they go through major new source review, either prevention of significant deterioration or the non-attainment review, which are the two components of major new source review. When they go through that major new source review, they then get a new permit, an additional permit. So they've got the flexible permit, and then they get a permit with a new number for the major new source review. So the way it works, there's no evasion of major new source review. As a practical measure, and counsel for EPA noted this, TCEQ has enforcement authority. If they would determine that someone who should have gotten a major permit did not get a permit, they could bring action. And what would be the penalty of that? Not only are there civil penalties for violating the state's implementation program, but in addition, the state could see conjunctive relief. So if you have gone forward and made a modification, you didn't go through major new source review, and that modification has resulted in emissions that should have been subject to major new source review, the state could seek injunctive relief for you to quit using that modification or for you to change that modification to bring those emissions down. So there's injunctive relief. As a practical measure, EPA has enforcement authority. EPA has oversight authority. If they were unhappy with the way Texas was administering its program, they could do their own SIP call. And the citizens have citizen suits. If a citizen is aware of a company that has evaded major new source review, they can bring a citizen suit. So there are enforcement methods that protect it. This opinion, the 2012 opinion, looked at those three provisions of the Texas Administrative Code and determined that the Texas Commission on Environmental Equality, the state agency that oversees the flexible permit program, that TCEQ could, with these three provisions of the Texas Administrative Code, there was affirmative compliance, I mean, it was a minor new source review program that affirmatively required compliance with major new source review. The provision 715 that the court looked at said the most stringent conditions would apply. Those three provisions of the Texas Administrative Code that the court relied on in the 2012 opinion are still there. And the court can rely on those, again, to find that EPA's approval of Texas's flexible permit program was correctly done. The program is a minor new source review program and does not allow evasion of major new source review. The provision, the operator looks at the situation when they think they're going to have admissions. They make a preapproval. They must have a permit before they begin operating. There were the rules that are . . . I assume that, you know, if someone is inclined to violate the law, they're going to . . . there's no in-place system that keeps them from it, even if they know they're going to go for a major review. There's nothing that makes them make a major review at any event until the end of the inspection. That's correct. So the law doesn't . . . even if you . . . the person that wants to evade the review before construction starts can do it in any event, whether it's major, minor, or however it's classified. Right. And what the petitioners here are wanting the state to do is to guarantee that someone will comply with the law. We can't guarantee that we can enforce it if they disagree. Thank you, Ms. Ubeni. Mr. Schaffer, you have some time for rebuttal. So Your Honors, our understanding of the major modification requirements and the federal rules at 51.66 and the statutory requirements themselves are, you have to show that major modifications are subject to new source review in your state implementation plan. You can't rely on promises about enforcing something if you can't demonstrate that you have this in the rules. EPA is relying on the permit amendment rules for approval. They're relying on Section 721. They are, again, sort of hooking that to Section 715 and talking about this idea that if, you know, the more stringent federal requirement applies. Section 715C1 says the entire section, including C11, this stringency language, does not apply to modifications that don't require a permit amendment. The other important point I want to make is that Subpart G, which is where the flexible permit rules are, that's an alternative to Subpart B. It's not that you have to comply with both simultaneously. If you go through the flexible permit door, you're in flexible permit land, and those rules control. Now, where Subpart G reaches out and grabs a Subpart B requirement and references it, pulls it in, then you're okay. There's a lot of talk about major modifications. There is a definition of major modifications. It's in Subpart B. In that definition, it says this is expressly limited to Subparts B and C. It's not applied to G. So you have to reach out and grab it. So we don't understand how you can read permit amendment rules that have a lot of stuff about changing permit representations and say, well, major modification requirements that happen after you get a permit, it's somewhere in there. It's kind of in there by default. There is no default. If you're operating under Subpart G permits, the rules say the rules for amending your permit are governed by Subchapter B, by the flexible permit rules. You can't fall back on Subchapter B if it's not there. So there needs to be an explicit reference. So you're relying on a permit amendment process that really is about allowable emissions and doesn't say anywhere what you have to do to determine whether or not you've got a major modification. Council, I appreciate your argument, but you know, when you see the EPA and Texas at the same council table, you know you've got your work cut out for you. I'm sorry, sir? I said when you see the EPA and the Texas council, state of Texas council at the same council table, your work is cut out for you. Well, I understand. I appreciate your argument. It does seem like the two agencies could have perhaps collaborated on an interpretation of these rules. They're coming in, making different arguments, using different sections. The basis that EPA articulates for approval, that's important. That's important. What bothered us, and the reason we're here at all, is their reliance on Section 721, which we think is pegged to allowable emissions, and EPA seems to say that in its discussion of the rules. And that's not the basis for deciding whether or not you've had a major modification. It's difficult to enforce these standards. EPA's brought a number of major modification requirements, but when you're authorizing a program that says you can make all the modifications you want, as long as they don't bust the maximum allowable emission levels, it does seem that somewhere in there you ought to be able to find a few words to say, unless you have a major modification that increases actual emissions, then you'd best come in before construction begins. Thank you, Your Honor. Okay, Mr. Schaffer. Thank you, sir. We'll call the next case of the day.